## PATEY v. METROPOLITAN LIFE INS. CO.

Middle Section.   January 18, 1936.

Petition for Certiorari denied by Supreme Court, May 2, 1936.

Higgins & Moore, of Nashville, for appellant.

J. P. Buchanan and Norman Farrell, both of Nashville, for appellee.

FAW, P. J.   This suit was brought on January 16, 1934, in the Chancery Court of Davidson County, Part 2, by Miss Nannie E. Patey against Metropolitan Life Insurance Company, to recover "total and permanent" disability benefits which she alleged were due her under an insurance contract issued by defendant.

On August 17, 1926, defendant issued to complainant a policy of insurance on her life in the sum of $5,000, and at the same time defendant issued to complainant a supplementary contract attached to

and made a part of said life insurance policy by which defendant contracted to pay to complainant certain specified disability benefits on the terms and conditions stated in said supplementary contract.

The consideration for the life policy was the annual payment by complainant of a premium of $147.05, and the consideration for the supplementary contract was an additional annual premium of $13.10.

The provisions of the supplementary contract pertinent to the present controversy are as follows:

"Metropolitan Life Insurance Company in consideration of the application for this Contract, as contained in the application for said Policy, the latter being the basis for the issuance hereof, and in consideration of thirteen dollars and ten cents, payable annually as an additional premium herefor, such payment being simultaneous with, and under the same conditions as, the regular premium under the said Policy, except as hereinafter provided:

"Hereby agrees, that upon receipt by the Company at its Home Office in the City of New York of due proof, on forms which will be furnished by the Company, on request, that the insured has, while said Policy and this Supplementary Contract are in full force and prior to the anniversary date of said Policy nearest to the sixtieth birthday of the insured, become totally and permanently disabled, as the result of bodily injury or disease occurring and originating after the issuance of said Policy, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, and that such disability has already continued uninterruptedly for a period of at least three months, it will, during the continuance of such disability, 1. Waive the payment of each premium falling due under said Policy and this Supplementary Contract, and, 2. Pay to the insured, or a person designated by him for the purpose, or if such disability is due to, or is accompanied by, mental incapacity, to the beneficiary of record under said Policy, a monthly income of $10 for each $1,000 of insurance, or of commuted value of instalments if any, under said Policy.

"Such waiver shall begin as of the anniversary of said Policy next succeeding the date of the commencement of such disability, and such payments shall begin as of the date of the commencement of such disability, provided, however, that in no case shall such waiver begin as of any such anniversary occurring, nor shall such payments begin as of a date, more than six months prior to the date of receipt of the required proof. . . .

"Notwithstanding that proof of disability may have been accepted by the Company as satisfactory, the insured shall at any time, on demand from the Company, furnish due proof of the continuance of such disability, but after such disability shall have continued for two full years the Company will not demand such proof more often than

once in each subsequent year. If the insured shall fail to furnish such proof, or if the insured shall be able to perform any work or engage in any business whatsoever for compensation or profit, the monthly income herein provided shall immediately cease, and all premiums thereafter falling due shall be payable according to the terms of said Policy and of this Supplementary Contract.''

Complainant alleges in her bill that, after the issuance of the aforesaid life policy and supplementary contract, she became afflicted with tuberculosis and went to the Davidson County Tuberculosis Hospital for treatment and stayed there most of the time in bed until December 20, 1927, when she returned home, with orders to do no work; that, after her return home, she stayed most of the time in bed and pursued substantially the same mode of treatment and life as she had in the hospital; that this continued until October 1, 1928, when she was directed, on account of her said disease, to return to the aforesaid hospital for further treatment, where she has been since as a patient suffering with and from tuberculosis and totally and permanently disabled within the terms and meaning of said policy; that the physicians at the hospital gave her no hope to believe that she can ever leave the hospital on account of her said disease, and that her present condition will continue.

Complainant further alleges that, although entitled to disability benefits and remission of premiums for all this period, as now advised, she gave no notice and made no claim on defendant until June, 1932, when she wrote defendant making such claim, which defendant declined and refused to pay; that, in June, 1933, complainant consulted her present counsel and again made a like claim of defendant which, on November 28, 1933, defendant again denied and refused to pay; and that all of the time since its issuance the policy has been in full force and effect.

Complainant further alleges that she is advised that, under the terms of the policy, she is entitled to remission of premiums and payment of benefits of $50 per month, commencing as of six months prior to the proof furnished in June, 1932, and to proper remission of premiums and to monthly benefits in the future during and while her said disability continues.

Complainant prays for a decree against defendant in accordance with the foregoing allegations, and she also prays for a decree for a penalty of 25 per cent ''to be visited on defendant, as provided by law, for the wrongful refusal to pay in bad faith, which refusal has entailed costs and expenses to complainant in the amount of the penalty asked, for the prosecution of her present suit.''

Defendant answered the bill and admitted the issuance of the policy and the supplementary contract as before stated, but denied the remaining allegations of complainant's bill.

Defendant denied that since said policy and supplementary contract were issued to complainant that complainant has been totally and permanently disabled as the result of bodily injury or disease so as to be prevented from engaging in any occupation and performing any work for compensation or profit, and defendant "especially" denied that complainant "has been totally and permanently disabled as the result of bodily disease six months prior to the date she furnished proofs to the defendant on forms furnished her by it, or six months prior to any proof or proofs submitted to defendant in writing by complainant."

Defendant denied that complainant was entitled to remission of premiums accruing on said life policy and supplementary contract, and denied that complainant is entitled to $50 per month disability benefits or any other sum beginning six months prior to the notice of said disability to the defendant.

Defendant alleged in its answer that the first information that it had that complainant was or had been suffering from any disease or ailment was on June 13, 1932, when it received a letter from complainant at its home office, that she had a hemorrhage on August 19, 1926, and was sent to the Davidson County Tuberculosis Hospital for observation and diagnosis; that complainant also stated in the same letter that at that time, June 9, 1932, she was doing part-time work, and that defendant is informed and believes that complainant was receiving $40 per month for said service.

Complainant demanded a jury to try her case, and a jury was impaneled and heard the evidence upon issues formulated by the parties under the direction of the Court, as follows:

"1. Was the complainant, Nannie E. Patey on January 9, 1932, and continuously up to and including June 9, 1932, totally and permanently disabled as the result of bodily injury or disease occurring and originating after the issuance of the policy so as to be prevented thereby from engaging in any occupation or performing any work for compensation or profit?

"2. Was the complainant so totally and permanently disabled from June 9, 1932, to the institution of the suit on January 16, 1934?"

At the conclusion of all the evidence, the defendant moved the court to withdraw all the issues from the jury, and the record recites that, "Thereupon the Court being of opinion that there were no material facts in the case in dispute, and that the matter to be tried was a question of the construction of the written provisions of the policy under the undisputed facts in the case, withdrew the issues of fact from the jury, as there was nothing to be submitted to the jury." Thereafter the chancellor stated his findings of facts and conclusions of law in a written opinion, directing a decree in favor of complainant and against defendant for $1,520.30 and the costs of the cause, and a decree was entered accordingly; but, subsequently, in due sea-

son, the chancellor amended his decree so as to adjudge that complainant recover of defendant the principal sum of $1,620.30 with interest thereon amounting to $126.81, aggregating $1,747.11, and the costs of the cause.

The defendant filed and presented a motion for a new trial, which was overruled by the court, and thereupon the defendant reserved its exceptions and prayed, obtained, and perfected an appeal to this court and assigned errors here, which may be resolved into the proposition that there is no evidence to support the decree of the Chancery Court, for the reason that the proof showed that on January 9, 1932, and continuously up to June 9, 1932 (when the written notice was given), and from the last-mentioned date to January 16, 1934 (the date of the institution of the suit), the complainant was not totally and permanently disabled as the result of bodily injury or disease so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit.

Inasmuch as the chancellor withdrew the case from the jury and decreed upon the evidence, the case is triable de novo by this court (Mutual Life Insurance Co. v. Burton, 167 Tenn., 606, 615, 72 S. W. (2d), 778) upon the facts found by the chancellor and any other material facts disclosed by the evidence. Code, section 10620.

The findings and opinion of the chancellor are as follows:

"The material and undisputed facts of this case follow:

"On August 17, 1926, the complainant had issued to her a policy by the defendant on her life, in the sum of $5,000 which contained a rider covering total and permanent disability. The total and permanent disability clauses in said insurance policy are in the following language:

" ' . . . Become totally and permanently disabled, as the result of bodily injury or disease occurring and originating after the issuance of said policy, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit.' and,

" ' . . . Nor shall such payments begin at a date more than six months prior to the date of the receipt of the required proof.'

"Prior to the issuance and delivery of said policy the complainant had followed the occupation of a school teacher in the County Public Schools of this State for a number of years at a salary of $65| per month, and afterwards was engaged with her sister in operating a boarding and rooming house in the City of Nashville where the said profits to both were about $50 per month, she getting her room and board at the boarding house. She continued to operate this boarding house for a short period after the policy was issued when she became afflicted with the disease of tuberculosis and became an inmate of the County Tuberculosis Hospital of Davidson County, as a charity

patient. She entered the hospital on or about August 19, 1926, and continued under treatment and observation until about December 20, 1927, when she was given a leave of absence and returned to her home in the City of Nashville where she remained until about October 1, 1928, when she returned to the hospital and has been continuously there since that date, to the date of the trial of this case, under treatment and observation. After she reentered the hospital for the second time, and in October, 1928, she was permitted by the hospital authorities to teach about ten pupils who were inmates of the hospital, and likewise afflicted with tuberculosis. She taught this class until about August, 1930, when she had to give it up because the authorities were of opinion that it was best for her and best for the pupils she was teaching.

"She received $40 a month from the hospital authorities for teaching this class. She was afterwards given employment by the hospital at a salary of $40 a month to look after disrobing female patients in the X-ray department, filing away pictures and making cash entries on the books which she has continued to do up to this date. Her compensation for teaching and for the clerical service indicated, was paid by the hospital authorities, and it was done because they thought it best to give her some kind of mental occupation that would help divert her mind from the disease from which she was suffering, and that while following the occupation she was given hours of rest each day, and did rest each day. She has been permitted to come to the city and do shopping by the authorities, since she has been in the hospital as a charity patient. On June 9, 1932, she made application for the disability provision and the remission of premiums, which the company refused.

"It further appears from the testimony of one of the physicians in charge of the hospital, that she is not in physical condition to teach a public school as she formerly taught, or to operate a boarding house as she formerly operated it, the occupations she followed previous to her affliction with tuberculosis. The complainant is still a charity patient in the hospital and has never been discharged therefrom by the authorities.

"The position of teaching a class and of acting as clerk in the X-Ray room, are positions that the complainant was given because she was a patient at the hospital. The service performed by the complainant in the X-Ray room was necessary and proper for the operation of the hospital, and if it had not been done by her or some other patient, some one would have had to be employed to do it.

"The annual premiums on this policy were $160.15 and two were paid by the complainant to the defendant, amounting to $320.30. These payments were made from and after January 1, 1932. The monthly disability benefits as provided in the policy were $50 per

month payable monthly and commencing January 9, 1932, to the filing of the bill amount to $1200. These two sums total $1,520.30.

"The Court is of opinion that the language above quoted from the policy does not mean that the complainant should be in a state of absolute helplessness from the disease from which she is suffering, in order to recover but if the disease renders her unable to do the material acts necessary to the prosecution of her former occupation in substantially the usual and customary way in which she discharged those duties, she would be entitled to a recovery; that the words 'totally and permanently disabled,' used in the policy do not imply an absolute and entire lack of earning power on the part of the insured. Pacific Mutual Life Ins. Co. v. McCrary, 161 Tenn., 389, 392-394, 32 S. W. (2d) 1052.

"The Court is therefore of opinion that on the undisputed facts and under the provisions of the policy above set out, the complainant is entitled to a decree for the sum of $1,520.30 and the costs of this cause, and a decree will be drawn accordingly. Newman, Chancellor."

It is seen that the learned chancellor held that "if the disease renders her (the complainant) unable to do the material acts necessary to the prosecution of her former occupations in substantially the usual and customary way in which she discharged those duties, she would be entitled to a recovery."

We think the ruling of the chancellor just stated fails to give effect to all the terms of the insurance contract. It was necessary to a recovery for complainant that the proof show that she was "totally and permanently disabled, as the result of bodily injury or disease occurring and originating after the issuance of said policy" (and not more than six months prior to the date of the required proof of such disability), and that such disability be of such nature and degree as to prevent her "from engaging in any occupation and performing any work for compensation or profit."

In the case of Pacific Mutual Life Insurance Company v. McCrary, 161 Tenn., 389, 32 S. W. (2d), 1052, 1053 (cited by the chancellor, supra), the insured had been a practicing physician and a farmer. The court said: "The insured, to claim the benefits, must be disabled, not only from pursuing the avocation of physician or farmer, but must be disabled from pursuing any avocation for wages, compensation or profit."

Prudential Insurance Company of America v. Davis, 18 Tenn. App., 413, at pages 423, 424, 78 S. W. (2d), 358, 365, was a suit to recover disability benefits under a contract of substantially the same purport, (although not in precisely the same phraseology), and it was there said: "Under the contract on which plaintiff is suing, proof that plaintiff is totally disabled from the prosecution of his usual em-

ployment as a railroad brakeman is not sufficient. His disability must be such as to render him wholly and continuously unable to perform any work for any kind of compensation of financial value."

In the last-cited opinion a number of opinions of courts of other jurisdictions to the same point as that last above stated are reviewed and approved. See, also, Bowen v. Metropolitan Life Insurance Company, 17 Tenn. App., 322, 337, 67 S. W. (2d), 164; Blagg v. Missouri State Life Insurance Company, 15 Tenn. App., 242.

In the recent case of Miller v. United States (March 4, 1935), 294 U. S., 435, 55 S. Ct., 440, 442, 79 L. Ed., 977, 982 (involving War Risk disability insurance), the court said: "The mere fact that he [the insured] was unable to follow the occupation of surveyor or to do work of the kind he had been accustomed to perform before his injury does not establish the permanent and total character of his disability."

The plaintiff in the instant case had followed two avocations at different times prior to her claimed disability. She had been a teacher in the public schools of Dickson county in this state, for which she received a salary of $65 per month. It is a matter of common knowledge that teachers in the public schools of this state are not paid for twelve months in the year, but for the school term which does not exceed nine months and is frequently less.

Then complainant, for a time, in connection with her sister as a partner, conducted a boarding and rooming house in the city of Nashville, from which she derived an income of approximately $25 per month, plus her board and lodging.

It appears that from October 4, 1928, to August 1, 1930, complainant received a salary of $65 per month, plus board and lodging, for teaching children at the Tuberculosis Hospital, and since the latter date she has been receiving a salary of $40 per month, plus board and lodging, for her services as attendant and clerk in the X-Ray room of the hospital.

It thus appears that since October, 1928, complainant has not been disabled to a degree that has prevented her from engaging in an occupation and performing work which has yielded her compensation as great, and at times greater, than she received prior to the onset of the disease to which she attributes her disability.

It is undisputed on the record that complainant is and has been since August 19, 1926, afflicted with pulmonary tuberculosis, and that, in her condition during the period named and at the time of the trial below, she could not pursue either of her former avocations of teaching in the public schools or conducting a boarding and rooming house.

But the fact remains that she is and has been at all times since October, 1928, able to engage in an occupation and perform work

for substantial compensation, and Dr. Crowe, physician on the staff of the Davidson County Tuberculosis Hospital, states that the kind of work complainant is doing at the hospital is not the only kind of work she could do.

We are of the opinion that, upon the facts of the record, complainant is not entitled to recover the disability benefits for which she sues, and defendant's assignments of error are sustained.

The complainant-appellee has assigned as error that the chancellor erred "in not allowing the statutory penalty for wrongful refusal to pay.".

It is recited in the chancellor's decree that "the Court being of opinion that the refusal of the complainant to pay the loss was not made in bad faith, and that this is not a proper case for allowing interest, the statutory penalty, of 25% on the recovery and interest [Code 1932, section 6434] is denied in the case, and it is accordingly so ordered, adjudged and decreed by the Court."

In the "proofs" submitted by complainant to defendant, she stated that she was able to do "part time work," and in her "attending physician's certificate" submitted as a part of said proofs, it was stated that the claimant is "now partially disabled;" that "total disability ended October 4, 1928." As a matter of course, so far as the action of this court is concerned, our ruling upon defendant's assignments of error operated to dispose of the entire case, and appellee's assignment of error becomes immaterial; but, as a petition for certiorari may be filed and we cannot anticipate the view which the Supreme Court may take of the case, it is deemed best that we should specifically dispose of appellee's assignment of error.

If the proof had sustained complainant's right to a recovery of disability benefits, we think the chancellor was right in denying a recovery of a penalty upon the record facts relating to that question. The appellee's assignment of error is therefore overruled.

It results that the decree of the Chancery Court is reversed, and the complainant's suit is dismissed.

The costs of the cause, including the costs of the appeal, will be adjudged against the appellee, Miss Nannie E. Patey.

Crownover and DeWitt, JJ., concur.