LEMARR v. METROPOLITAN LIFE INS. CO., No. 2.—143 S. W. (2d) 891.

Eastern Section. August 10, 1940.

Petition for Certiorari Denied by Supreme Court, October 12, 1940.

Frank P. Bowen, of Knoxville, for plaintiff in error.
Kennerly & Key, of Knoxville, for defendant in error.

McAMIS, J. This is an action to recover disability benefits under a group policy. The certificate or policy sued upon was issued in 1927 and was kept in force until after August 17, 1937, when the insured Clyde Lemarr, plaintiff below, alleges he became totally and permanently disabled by reason of insanity. The present suit was instituted July 7, 1939, and resulted in a directed verdict in favor of the defendant at the conclusion of all the proof.

Plaintiff Lemarr filed a motion for a new trial which was overruled, and he has appealed in error to this court insisting that the court erred in the exclusion of certain medical testimony offered in his behalf and in directing the jury to return a verdict in favor of the defendant.

Plaintiff is a man 34 years of age and on August 17, 1937, was employed by the S. H. Kress Company as the manager of its store at Rome, Georgia. On the date mentioned he suffered a nervous or mental breakdown which culminated in his being placed in a sanitorium until January, 1938, when he was removed to the Eastern State Hospital for the insane at Knoxville. He remained in that institution until in May, 1938, when, at the instance of relatives, he was allowed a discharge and taken to the home of his father who resided on a farm near Knoxville, Tennessee.

As to his condition upon his removal from the Eastern State Hospital in May, 1938, the Superintendent testified that in his opinion plaintiff was still suffering from dementia praecox, a condition which he described as totally disabling and one which his experience had indicated was permanent in duration though certain individuals had been known to attain a state of remission and return to normal activities of life. This testimony of the Superintendent was objected to and excluded insofar as the witness expressed his opinion that plaintiff was totally and permanently disabled when he last saw him in May, 1938. One of the assignments is directed to the exclusion of this and other medical testimony offered in behalf of plaintiff.

The undisputed proof shows that after plaintiff was taken to the farm home of his father he was given light work on the farm and his father testified that he steadily improved to the point that he thought he was able to resume his duties as manager of Kress' store.

About this time he made application to his former employer for reinstatement but his application was denied and in July, 1938, he opened and began to operate a five, ten and twenty-five cent store of his own on Central Avenue in Knoxville. It is shown that plaintiff himself negotiated for the lease of the premises where this store was located and actively managed and operated the store for a period of approximately 14 or 15 months prior to the institution of this suit.

During this period it is shown by plaintiff and other witnesses, including plaintiff's wife, that he performed substantially every duty connected with the operation of this business, going to work at 7 o'clock in the morning and working every day or practically every day until closing hours at night which varied from 6 to 9 o'clock P. M. It appears that this business had a gross income of approximately $1,000 per month which was deposited in a bank by plaintiff and checked out upon checks signed by him. A short time before the trial of the case he became interested in another store at Fountain City and there is proof that he also managed or assisted in the management of this store.

During all of this period following his release from the Eastern State Hospital, plaintiff engaged in all the normal activities of life, living with his family which he supported from the income from the store and demeaning himself in a sane and peaceful manner. Practically the only proof which suggests that he had not attained a complete recovery from the previous impairment of his mind is the testimony of his father to the effect that he sometimes spoke of seeing things which he, the father, could not understand but it is clear from all the proof that such mental aberations as he suffered during this period did not in any manner affect his business activities. As stated, he was able to discharge, in the manner of a sane man, substantially each and every duty connected with the operation of his business and there was nothing in the state or condition of his mind which made it improper or dangerous for him to do so. On the contrary, all of the proof shows that he continued to improve physically and mentally after he began the operation of the store on Central Avenue which he operated in a creditable and energetic manner. There is nothing to indicate that he may not continue to do so provided he is not overburdened with work or mental worry and anxiety. The question presented is whether or not plaintiff, under the facts and inferences most favorable to plaintiff to be drawn therefrom, may be considered totally and permanently disabled within the meaning of the policy provisions and the definition of total and permanent disability adopted by the courts in the determination of the rights of policy holders under policies containing similar provisions.

The judicial definition of total and permanent disability is too familiar to require reference to the holdings of the Supreme Court and of this court upon that question.

Before considering the assignments directed to the action of the court in directing a verdict in favor of the defendant, we shall consider the action of the court in excluding the opinion of Dr. Hauk, the Superintendent, that insured was both totally and permanently disabled in May, 1938, as well as the exclusion of the testimony of Dr. Smith, the purport of which will be hereinafter stated.

The testimony of Dr. Hauk appears to have been excluded upon the ground that it was the expression of an opinion upon the very issue to be determined by the jury. Dr. Hauk appears to have had the plaintiff under observation and in his regular charge for a sufficient length of time to form an opinion as to his sanity and the extent and nature of his disability. Upon authority of Principi v. Columbian Mut. Life Ins. Co., 169 Tenn., 276, 285, 84 S. W. (2d), 587, and National Life and National Life & Accident Ins. Co. v. Follett, 168 Tenn., 647, 80 S. W. (2d), 92, we think this evidence was competent as establishing the mentality of plaintiff on the date of his discharge in May, 1938, or as tending to support plaintiff's insistence that, on that date, he was totally disabled and that his disability was apparently permanent.

As to the exclusion of the testimony of Dr. Smith, it appears that Dr. Smith was employed by plaintiff to examine him some two or three times for the purpose of testifying as a witness in his behalf in this case. Plaintiff was not under treatment by Dr. Smith and Dr. Smith admits that such opinion as he had of plaintiff's condition and disability was the result of statements made by others, i. e., the history of plaintiff prior to that time, and the examination of plaintiff upon these matters.

Upon this subject, quoting Jones on Evidence, it was held in Gulf Refining Co. v. Frazier, 15 Tenn. App., 662, that where a physician examines an injured person for the express purpose of testifying as a witness for him declarations made by the patient to the physician of present pain are inadmissible and that a physician could not express an opinion upon such circumstances based upon the patient's history.

The reason for this ruling is that such testimony is open to the suspicion of symptoms having been manufactured or feigned by the patient for the purpose of influencing the opinion of the examining physician and we think the same reasoning applies to the testimony of a physician employed to investigate the mental soundness or unsoundness of a patient for the purpose of testifying for him as a witness. We think there was no error in the exclusion of Dr. Smith's testimony.

Passing to a consideration of the action of the court in directing a verdict in favor of the defendant, and considering the testimony of Dr. Hauk along with the testimony considered by the trial judge, we think it is clear that, upon the undisputed evidence, insured is not totally and permanently disabled within the meaning of the policy contract. It is true he appeared to be so disabled to Dr. Hauk in May, 1938, but subsequent activities of the .insured which have, according to the undisputed proof, improved his condition have demonstrated that his diability is neither total nor permanent, though he was totally disabled for a period of several months.

Many cases hold that an insured will not be required to engage in any activity which would further impair the state of his health and that, under such circumstances, the insurer is obligated to pay the benefits provided by the policy but, in this case, the proof shows conclusively that to engage in such activities as plaintiff has engaged in since his discharge from the hospital are distinctly beneficial and helpful and it is clear from the whole evidence that plaintiff has earned a substantial income from these activities. Under these circumstances, medical theories must give way to established facts and we think the court below was correct in holding as a matter of law that plaintiff is not totally and permanently disabled within the meaning of the policy and that the court was correct in directing the jury to return a verdict in favor of the defendant. For supporting cases see Bowen v. Metropolitan Life Insurance Co., 17 Tenn. App., 322, 67 S. W. (2d), 164; Patey v. Metropolitan Life Ins. Co., 19 Tenn. App., 634, 93 S. W. (2d), 1271, and Nashville Trust Co. v. Prudential Insurance Co., 8 Tenn. App., 678.

Affirmed.

Portrum and Ailor, JJ., concur.